**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**GABRIEL GONZALEZ** **PETITIONER**

**v.** **NO. 2:24-cv-00153-LPR-PSH**

**CHAD GARRETT, Warden,**
**FCI Forrest City Low** **RESPONDENT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2241, petitioner Gabriel Gonzalez ("Gonzalez") challenges the manner in which the Federal Bureau of Prisons ("BOP") is awarding First Step Act ("FSA") time credits. He maintains that the BOP is erroneously awarding the credits on a per-day basis, i.e., on the basis of a prisoner's daily participation in Evidence-Based Recidivism Reduction Programming ("Program" or "Programs") or Productive Activities ("Activity" or "Activities"), when he understands the FSA to mandate that the credits be awarded on the basis of each Program or Activity the prisoner completes. As a part of the claim, Gonzalez maintains that the BOP is erroneously awarding the credits on the basis of a prisoner's "earning status," i.e., on the basis of a prisoner's "presumed participation" in a Program or Activity, when he understands the FSA to mandate that the credits be awarded on the basis of a prisoner's actual participation in, or completion of, a Program or Activity. It is recommended that this case be dismissed. To the extent that his claims are within the scope of 28 U.S.C. 2241, persuasive legal authority establishes that the manner in which the BOP is alleged to be awarding the credits is not inconsistent with the FSA.

The record reflects that Gonzalez entered the custody of the BOP in 2006 and came to be housed at a BOP facility in Forrest City, Arkansas. There, he received a job assignment in the institution's education department, working as a law clerk in the prison's law library and teaching classes as an Adult Continuing Education instructor and tutor. Sometime in 2022, he was terminated from his job assignment following a "contraband incident." See Docket Entry 2 at CM/ECF 4. He denied any involvement in the incident and was never disciplined for it.

This case began when a pleading was severed from Gonzalez v. Garrett, No. 2:22-cv-00243-LPR. A new case—this case—was opened, and that pleading was filed as a petition for writ of habeas corpus.[1] In the petition, Gonzales framed the issue presented as follows: "[m]ay the BOP confer FSA time credits to prisoners based on their earning-status in lieu of a prisoner's actual completion of those programs?" See Docket Entry 2 at CM/ECF 1-2. He clarified his framing of the issue, or otherwise expanded the scope of this case, by additionally alleging, inter alia, the following:

[1] Two other pleadings were severed from 2:22-cv-00243-LPR, and two other cases were opened. In 2:24-cv-00151-LPR-PSH, Gonzalez maintained that he was terminated from the job assignment without any evidence of a rule violation, the issuance of a formal report, or first receiving a formal hearing. He alleged that his termination adversely impacted his ability to participate in FSA Programs and Activities, thereby preventing him from earning FSA time credits. In 2:24-cv-00152-LPR-PSH, Gonzalez maintained that he should receive FSA time credits for his participation in Activities prior to the adoption of the FSA.

> 1) "The BOP's regime for calculating FSA time credits "effectively eliminate[s] a prisoner's ability to aggressively pursue programming enrichment through active participation in multiple courses—while also deriving the compounding of time credit benefits that were originally intended by the legislature." See Docket Entry 2 at CM/ECF 5.
>
> 2) "The amount of FSA [earned time credits] available to [a prisoner] is only limited by the number of [Programs or [Activities] ... taken, and by the respective days of participation he or she actually contributes to those [Programs or Activities]." See Docket Entry 2 at CM/ECF 8.

Gonzalez asked that the BOP be found to have exceeded its authority by "self-legislating alternate methods" of administering the FSA. See Docket Entry 2 at CM/ECF 12. He additionally asked that an order be issued directing the BOP to "follow the original text of [the FSA] and the existing textual expressions of the statute that indicates [Programs] and [Activities] ... are to be given compounded credit based on both the number of [Programs and Activities] taken, along with the rate at which credits are applied for each 30 days of programming—and not by 30 calendar days of assessment." See Docket Entry 2 at CM/ECF 12.

Respondent Chad Garrett ("Garrett") filed a response to the petition and asked that the petition be dismissed. He so maintained for two reasons. First, the federal courts lack subject matter jurisdiction. It was Garrett's contention that Gonzalez has earned more than 365 days of FSA time credits, and "365 days is the maximum amount of credit that can be applied toward early release to a term of supervised release." See Docket Entry 13 at CM/ECF 2. As to the additional FSA time credits Gonzalez has earned, Garrett represented the following:

> Gonzalez' additional credits would be applied toward prerelease custody. However, a transfer to prerelease custody would not impact the duration of Gonzalez's confinement. "The Eighth Circuit has stated that it considers a request for transfer to prerelease custody as a challenge to the prisoner's place of confinement." ... Even if Gonzalez were entitled to the relief he seeks, ..., granting said relief would not shorten the duration of his confinement at all, as an earlier transfer date would simply move him from one place of confinement to another. Thus, the claim is not a challenge to the fact or duration of Gonzalez's confinement. ... As the claim would only impact where he would serve the remainder of his sentence, it is properly characterized as one challenging the conditions of his confinement that is not cognizable in a habeas action and over which this Court has no subject matter jurisdiction. ...
>
> ... Gonzalez's petition does not challenge the validity of his sentence, nor does it raise any claims that would affect the duration of his confinement. As a result, this Court lacks subject matter jurisdiction over the petition, and it should be dismissed.

See Docket Entry 14 at CM/ECF 2-4. Second, Gonzalez's claims have no merit. In support of that assertion, Garrett alleges the following:

> The [FSA] specifically states that time credits are to be awarded based on the number of days an inmate participates in programming. For this reason, courts that have considered the argument that Gonzalez makes in his petition determined that there is "'no support [for Gonzalez' position] in either the applicable statutory language or the legislative history of either the FSA or the BOP rules.'" ... Although Gonzalez attempts to create a distinction between what he terms "program days" and "calendar days," he is requesting that credits be determined on a per-program basis, which conflicts with the plain language of the statute. ... If Congress had wished credits to be determined based on the number of programs and not the number of days, it could and would have said so. It did not. ...

See Docket Entry 13 at CM/ECF 4-5.

Gonzalez thereafter filed a reply in which he addressed Garrett's two reasons for asking that the petition be dismissed. With respect to the jurisdictional question, Gonzalez's position is not a model of clarity. He agreed that 365 days is the maximum number of days, or credits, that can be applied toward a prisoner's early transfer to a term of supervised release, but the fact that he has earned more than 365 days of FSA time credits does not mean he has alleged a "custody placement issue." See Docket Entry 17 at CM/ECF 2. He failed, though, to explain why this case does not pose a mere custody placement issue.

Gonzalez's position on the merits of his claim is clearer. It is his contention that nothing in the FSA, its legislative history, or any agency directive prevents the BOP from awarding time credits on the basis of each Program or Activity completed.

A federal court will typically resolve a jurisdictional question before proceeding to the merits of a case. In this instance, though, resolution of the jurisdictional question is problematic. Although Garrett's assertion of a lack of subject matter jurisdiction may ultimately carry the day, the undersigned is not convinced that the question has been adequately briefed. The case law appears to be somewhat unsettled, there is no clear guidance on the question, and Gonzalez's brief is confusing.[2] The undersigned would ordinarily solicit additional briefing from the parties, but Garrett's second reason for seeking the dismissal of Gonzalez's petition—the claim he advances in the petition is without merit—is persuasive and why the undersigned recommends that the petition be dismissed.

---

[2] Admittedly, there appears to be some support for Garrett's position. See e.g., Gant v. King, No. 23-cv-1766-NEB, 2023 WL 6910771 (E.D. Minn. Oct. 19, 2023). In that case, the district court considered a petitioner's claim that he had a protected liberty interest in the application of his FSA time credits toward his pre-release custody. Gant v. King, though, is distinguishable from the case at bar, as Gonzalez does not make the identical claim here.

In Nishida v. Segal, No. 23-cv-1293-PJS-DJF, 2024 WL 1722371 (D. Minn. Mar. 21, 2024), report and recommendation adopted, No. 23-cv-1293-PJS, 2024 WL 1718810 (D. Minn. Apr. 22, 2024), Nishida maintained that she was entitled to FSA time credits for each qualifying program she completed in a thirty day period. "Under this theory, if she simultaneously participated in ten qualifying programs during the same 30-day period, she could earn 100 or 150 [credits] (10 or 15 [credits] for each such program), rather than 10 or 15 [credits] total for the 30-day period." See Id., 2024 WL 1722371, 2.[3] The district court rejected the theory, finding the following:

[3] The FSA provides, in part, the following with respect to the earning time credits:

(4) Time credits.--

(A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

See 18 U.S.C. 3632(d)(4)(A)(i)-(ii).

> ... this interpretation of the ... FSA is inconsistent with its text. The FSA ... does not require the BOP to award credits for each *program* completed. ... Instead, prisoners "shall earn ... time credits for every 30 days of successful participation in evidence-based recidivism reduction programming." 18 U.S.C. § 3632(d)(4)(A)(i) (emphasis added). Whether a prisoner participates in one program on a given day or ten programs simultaneously, she is "participati[ng] in evidence-based recidivism reduction programming," id., and is equally eligible to receive the same amount of time credits for that day. "Congress made clear that a prisoner earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the eligible programs in which they participate." Dale v. Hawkins, No. H-22-3224, 2023 WL 2601215, at 5 (S.D. Tex. Mar. 22, 2023); accord Bray v. Yates, No. 2:22-cv-142 (JTR), 2023 WL 2894918, at 6 (E.D. Ark. Apr. 11, 2023) (citing Burruss v. Hawkins, No. H-22-2740, 2023 WL 319955, at 6 (S.D. Tex. Jan. 19, 2023)). The Court must give effect to the unambiguous language of the statute as written, see Chevron USA., Inc. v. Nat. Resources Def. Council, Inc., 467 U.S. 837, 842–43 (1984), and therefore rejects any claim ... Nishida might be making to credits calculated based on the number of programs in which she participated.

See Id. (emphasis in original).[4]

The reasoning of Nishida v. Segal is adopted. Gonzalez earns FSA time credits based on the number of days he participates in eligible Programs and/or Activities, not for each eligible Program and/or Activity he completes. The BOP can award the credits in such a manner.

---

[4] In Loper-Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), the United States Supreme Court overruled Chevron USA., Inc. v. Nat. Resources Def. Council, Inc. The decision in Nishida v. Segal did not turn on the application of the Chevron doctrine, and the doctrine has no application here. The FSA is unambiguous on the question at bar.

As a part of Gonzalez's claim, he alleges that the BOP is erroneously awarding FSA time credits on the basis of a prisoner's "earning status," i.e., on the basis of a prisoner's "presumed participation" in a Program or Activity, when the FSA mandates that the credits be awarded on the basis of a prisoner's actual participation in, or completion of, a Program or Activity. It appears that Garrett did not address this part of Gonzalez's claim, but Garrett's failure to do so is of no consequence. Accepting without finding that the BOP is awarding the credits in such a manner, Gonzalez lacks standing to pursue this part of his claim, as he has failed to show how he has been injured by the BOP's action. Specifically, he has failed to show that "he sustained, or is immediately in danger of sustaining, some direct injury as the result of the challenged ... conduct and that the injury or threat of injury must be both real and immediate." See Smith v. Golden China of Red Wing, Inc., 987 F.3d 1205, 1209 (8th Cir. 2021) (internal quotation marks and citation omitted).[5]

---

[5] "Standing ... is a jurisdictional requirement, and thus can be raised by the court sua sponte at any time during the litigation." See F.B. v. Our Lady of Lourdes Parish and School, No. 23-3624, 2025 WL 86945 (8th Cir. Jan. 14, 2025) (internal quotation marks and citation omitted). The requirement ensures that the federal courts only adjudicate actual cases and controversies. "Article III standing requires (1) an 'injury in fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." See Smith v. Golden China of Red Wing, Inc., 987 F.3d at 1209 (internal quotation marks and citation omitted).

It is for the foregoing reason that this case should be dismissed. It is therefore recommended that this case be dismissed with prejudice, all requested relief be denied, and judgment be entered for Garrett.

DATED this 22nd day of January, 2025.

UNITED STATES MAGISTRATE JUDGE